STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
J. MARK CHILDS (Cal. Bar No. 162684)
Assistant United States Attorney
OCDETF Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2433
     Facsimile: (213) 894-0142
     E-mail:    mark.childs@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 13-484-CAS |
|---|---|
| Plaintiff, | GOVERNMENT'S POSITION REGARDING SENTENCING FACTORS; EXHIBIT |
| v. | |
| CLAUDIA GARCIA, | Sentencing Date: 3/9/15<br>Hearing Time:    2:30 p.m. |
| Defendant. | |

     Plaintiff United States of America, through its counsel of record, Assistant United States Attorney J. Mark Childs, hereby files its position regarding sentencing factors for defendant CLAUDIA GARCIA ("defendant").

      The government recommends a sentence of 33 months' imprisonment, three years supervised release, no fine, $100 special assessment, and, as a term of supervised release, to have no communication, directly or indirectly, with members of the Mexican Mafia, members of street gangs allied with the Mexican Mafia, members of La Familia drug cartel, or members of MS-13 street gang or TMC

1 | street gang.

2 | The government's sentencing position is based on the attached
3 | memorandum of points and authorities, the files and records in this
4 | case, the attachment hereto, and any additional argument or evidence
5 | it may present at sentencing.

6 | Dated: February 24, 2015.        Respectfully submitted,

7 |                                   STEPHANIE YONEKURA
                                      Acting United States Attorney
8 |
                                      ROBERT E. DUGDALE
9 |                                   Assistant United States Attorney
                                      Chief, Criminal Division
10 |

11 |                                      /s/
                                      _____
                                      J. MARK CHILDS
12 |                                   Assistant United States Attorney
                                      OCDETF Section
13 |
                                      Attorneys for Plaintiff
14 |                                   UNITED STATES OF AMERICA

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.**

### **Summary**

The government recommends a sentence of 33 months' imprisonment, three years supervised release, no fine, $100 special assessment, and, as a term of supervised release, to have no communication, directly or indirectly, with members of the Mexican Mafia, members of street gangs allied with the Mexican Mafia, members of La Familia drug cartel, or members of MS-13 street gang or TMC 13 street gang.

Defendant's sentence should *not* be reduced any further as defendant has a significant criminal history and was deeply involved with a vicious street gang, MS-13, and aided its then-leader, defendant Luis Vega aka "Little One". The government refers the Court to the Government's Opposition to Vega's Motion to Dismiss for the details of Vega's criminal activities. (Docket #340).

The government cut defendant a huge break by allowing defendant to plead below the 10-year mandatory minimum sentence. Because defendant, an associate of a major street gang member, pled guilty to 21 U.S.C. §§ 846, 841(b)(1)(C), she avoided a mandatory minimum sentence of five or ten years. The government provided defendant with this huge break because defendant was a lacky to a shotcaller of MS-13 who picked-up and delivered marijuana at his behest.

The government's recommended sentence takes into consideration all of defendant's apparent change in behavior.

### **II.**

### **Introduction**

On September 18, 2014, defendant CLAUDIA GARCIA ("defendant") pled guilty to conspiring to distribute marijuana in violation of 21

1

U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), as charged in count one.

In her plea agreement with the government and during her guilty plea, defendant admitted the following:

Beginning on a date unknown, but no later than in or around January 2011, and continuing to in or about November 2011, in Los Angeles, defendant agreed and conspired with Vega and others to knowingly and intentionally distribute, and possess with intent to distribute marijuana.

Specifically, during the year 2011, defendant, at the direction of Vega, transported marijuana and drug proceeds, and communicated messages about drug transactions between Vega and others.  On or about October 10, 2011, in telephone conversations, defendant informed Vega that an unindicted co-conspirator had a problem with drugs that were provided by Vega, and Vega told defendant to inform the unindicted co-conspirator to do the drug deal anyways, and defendant agreed to do so.

On or about October 10, 2011, in telephone conversations, Vega instructed defendant to ask an unindicted co-conspirator if the unindicted co-conspirator had sold the drugs that were provided by Vega, and defendant agreed to do so.

On or about October 11, 2011, in telephone conversations, defendant informed Vega that an unindicted co-conspirator, who had received drugs from Vega, would have drug proceeds available for Vega later that evening, and Vega told defendant to inform the unindicted co-conspirator to have the money ready to be picked up.

On or about October 11, 2011, in telephone conversations, Vega informed defendant that Vega was negotiating the price for the purchase of a large quantity of marijuana.  In response, defendant

agreed to update a drug customer of Vega about Vega's pending drug deal.

On or about October 11, 2011, in telephone conversations, Vega informed defendant that Vega would acquire a large quantity of marijuana the next day; and defendant informed Vega of her communications with various drug customers who wanted to purchase marijuana from Vega and defendant. Defendant agrees that her role in the drug-trafficking conspiracy involved at least 50 kilograms of a mixture or substance containing a detectable amount of marijuana.

### III

### Plea Agreement and PSR

Consistent with the plea agreement, the PSR, under the Sentencing Guidelines November 2014 Edition, to a base offense level of 24 (USSG §§ 2D1.1(a)(5), (c)(8) (November 2014 Edition)), a three-level reduction for role, and a three-level reduction for acceptance of responsibility. Defendant's total offense level is 18 which results in a Sentencing Guideline range of 33 to 41 months imprisonment.

Because defendant pled guilty to 21 U.S.C. §§ 846, 841(b)(1)(C), she avoids a mandatory minimum sentence of ten years.

### IV

### Government's Sentencing Recommendation

Based on the factual basis in the plea agreement and the facts set forth herein and the PSR, as well as the application of the factors set forth in 18 U.S.C. § 3553(a), the government recommends a sentence of 33 months' imprisonment.

*A. Analysis of the Section 3553(a) Factors*

The 33-month sentence recommended by the United States takes

3

into account the sentencing considerations set out in 18 U.S.C. § 3553(a). Additionally, the sentence recommended by the government is reasonable within the meaning of Title 18, United States Code, Section 3553(a). <u>United States v. Booker</u> requires the Court to consider the factors identified in Section 3553(a) when imposing sentence. 543 U.S. 220 (2005). Among the factors to be considered are: the nature and circumstances of the offense; the history and characteristics of the defendant; the need to protect the public from future crimes of the defendant; and the Sentencing Guidelines. 18 U.S.C. § 3553(a).

With respect to the nature and circumstances of the offense and the Sentencing Guidelines, the government's recommended sentence of 33 months' imprisonment, **which falls within the applicable guidelines range**, is both reasonable and appropriate. <u>See</u> <u>United States v. Carty</u>, 520 F.3d 984, 988 (9th Cir. 2008) ("a correctly calculated Guidelines sentence will normally not be found unreasonable on appeal").

Defendant undeniably committed serious offenses as she knowingly and intentionally picked up and delivered large quantities of marijuana, repeatedly, and picked up proceeds from those deliveries.

Based on intercepted calls and her criminal history, defendant lived a criminal life. Defendant was working for a notorious street gang, MS-13, and distributing marijuana on their behalf. She hung out and associated with gangbangers. In recorded calls, she never hesitated to act on the behalf of Vega, the leader of MS-13. In the past, drugs and ammunition and have been found at her residence. PSR ¶ 83.

She trafficked the marijuana for a leader of MS-13, not for

1  cancer patients.  For 12 years she did not have a job (between the
2  years 2000 to 2012) as she claims she was a stay at home man.  PSR
3  ¶¶ 83, 130.  However, at the time, she was in relationships with
4  gangsters and criminals, and conducting gangster business with TMC-13
5  and MS-13 (a gang loyal to the Mexican Mafia).  She now claims she
6  turned her life around.  However, she needs to be punished for her
7  support of a dangerous criminal organization by helping it generate
8  revenue.
9      For instance, defendant set up three calls between herself, Vega
10 and Vega's criminal associates in California state prisons.  For
11 instance, as demonstrated by the summaries of the calls attached
12 hereto, on October 27, 2011, defendant coordinated a three-way call
13 between herself, "Guilty," an inmate at Calipatria state prison, and
14 defendant.  During this call, Vega discussed with Guilty all sorts of
15 gang business, including, a "hit" in a prison yard, gang member(s)
16 controlling prison yards, and relaying messages among gang
17 associates.  <u>See</u> attachment hereto [Session 3674, page 365].  Guilty
18 and Vega agreed to use defendant as a conduit for their
19 communications.  <u>See</u> attachment hereto.
20     Her willingness to support MS-13 makes clear that a significant
21 and meaningful sentence of imprisonment is warranted to punish this
22 crime adequately and deter its commission.  Accordingly, a sentence
23 of 33 months reflects the serious of the gang problem in this country
24 and sends a serious message to those that will enable those gangs.
25     It is certainly true that individuals such as defendant play a
26 critical role in the distribution chain, not simply by supporting
27 those they know are involved in significant criminal activity but
28 also by helping to pick-up and deliver drugs.

5

In mitigation, defendant is a lackey who followed orders. Because of her minor role in the drug trafficking conspiracy, a sentence of 33 months imprisonment is appropriate when the nature of the offenses he committed is balanced against defendant's particular role in the criminal conspiracies he was a part of. The government took defendant's minor role into account in allowing defendant to plead to a penalty statute that does not contain a mandatory minimum term of imprisonment, namely, 21 U.S.C. §§ 846, 841(b)(1)(C).

With respect to defendant's history and characteristics, these 3553(a) considerations support the guidelines sentence recommended by the United States. To her detriment, defendant has the following serious criminal conviction record: Fight and noise misdemeanor (2004); and narcotics conviction. PSR at ¶¶ 82-96. Not surprising, defendant has multiple police contacts over the years and outstanding legal issues. Id.

The nature and history of defendant, especially defendant's criminal convictions and street gang ties, therefore, support the sentence the government is recommending as a minimal sentence to deter defendant and others in her shoes.

In short, based on all of the above-mentioned factors and considerations, the government proposes a 33-month sentence, which takes into account the offense conduct and, if imposed, would reflect the seriousness of defendant's criminal conduct. The sentence also takes into account defendant's serious criminal history, while providing a just punishment that promotes respect for the law. Moreover, the requested sentence, which is tailored to fit defendant's role in the drug conspiracy, will not only deter defendant from engaging in similar crimes but will also help deter

6

others from engaging in serious drug trafficking activity.

## V.

## CONCLUSION

For all of the foregoing reasons, a sentence of: 33 months' imprisonment, three years supervised release, no fine, $100 special assessment, and, as a term of supervised release, to have no contact, directly or indirectly, with members of the Mexican Mafia, members of street gangs allied with the Mexican mafia, members of La Familia drug cartel, or members of MS-13 or TMC street gangs is warranted in this case. This sentence is appropriate because it accounts for the seriousness of the offenses, the need to promote respect for the law, the need to impose just punishment for the offense, and the need to afford adequate deterrence both to the defendant and on a general level.   18 U.S.C. § 3553(a)(2)(A) and (B).